BOARD OF COMMISSIONERS v. STATE.
(No. 888; Decided July 15th, 1916; 158 Pac. 801.)

SCHOOLS AND SCHOOL DISTRICTS—APPORTIONMENT OF FUNDS—"GRADE SCHOOL."— WORDS AND PHRASES — STATUTORY CONSTRUCTION — STRICT CONSTRUCTION.

1. Under Laws 1913, Chapter 52, as amended by Laws 1915, Chapter 159, providing for an apportionment of general county school funds to school districts according to the number of teachers employed therein, but precluding credit

for a teacher in a grade school, wherein the average attendance of pupils has been less than six pupils per teacher the term, "grade school" means a school in which there are grades, or a school divided into grades and can apply only to a graded school, as technically speaking there are no grades in an ungraded school.

2. When the provisions of a statute are qualified by a proviso creating an exception, the proviso will be strictly construed and not enlarged beyond its ordinary meaning, if it has any, nor beyond the scope that it may clearly cover.

ERROR to the District Court, Laramie County; HON. WILLIAM C. MENTZER, Judge.

Mandamus proceedings by the State on relation of School District No. 2, in the County of Laramie, against the Board of County Commissioners of the County of Laramie and others to compel a sufficient general school tax levy for the year 1916 to raise $300.00 for each of the tweny-seven teachers employed by the relator, and engaged in teaching schools in said district for six months or more during the preceding school year ending April 30th, 1916.

From a judgment in favor of relator, defendant brings error.

*Samuel M. Thompson* and *John D. Clark,* for plaintiffs in error.

The purpose of the suit is to secure an authoritative construction of the term "grade school" occurring in the second proviso of Section 1 of Chapter 52 of the Laws of 1913; prior to 1913 the principle of self-government and self-support controlled our educational system; by the act of 1913 financial assistance is provided for country districts possessing a small amount of assessable property, but in the operation of this statute it is clear that the intention was that the term "grade school" used therein should apply to all schools below high school rank. This is shown (1st) by the ordinary, usual meaning of the term in common parlance; (2nd) by the internal indicia of the statute itself, and (3rd) by the purpose sought to be served and the sit-

uation to be reached by the statute. The term has a popular meaning. The assembling of two or more grades under one teacher is usual in country schools and by no means unusual in the city schools; the term "grade" indicates a stage of progress or advancement in school work, and as is well known there are eight grades below the high school; the County Superintendent's certificate indicates that the pupils in rural schools are classified by teachers, as doing work in certain grades. A school complying with all of the other elements of the definition is a "grade school" irrespective of the length of the term. The biennial reports of the State Superintendent indicate that rural schools follow the grade system. It will be noted that the word "graded" is used when the administrative character of the school is indicated, that is the division or non-division of the pupils into separate classes and wherever the word "grade" or "grades" is used, it is for the purpose of indicating the place of the school in the educational scheme. The term "grade school" is used in juxtaposition with the term "high school," clearly indicating that the term "grade school" was intended to mean all elementary schools below high school rank. The number of pupils fixed by the statute also relates to country schools, as it is common knowledge that the number of pupils per teacher in city schools is very much larger than the number of pupils per teacher in the high school; had it been intended to apply to city schools alone the limitation as to average attendance would have undoubtedly been fixed much higher. The Legislature intended to place some limitation upon the opportunity of school boards to expend money furnished by outside taxpayers and that limitation plainly appears in the proviso. The right of the district to levy a special tax in addition to this new tax was not impaired or limited by the new law; the purpose of the limitation was to protect taxpayers against misuse by the boards of directors of the opportunity to secure and expend funds furnished by taxpayers in other districts. It was intended to prevent the establishment of

schools for one or two pupils; it was further intended to encourage the consolidation of rural schools, a purpose which has been in some measure accomplished as appears from reports of some of the county superintendents.

*W. E. Mullen,* for defendant in error.

The issues involved may be conveniently presented under three heads: (1st) Evidence offered to sustain the petition; (2nd) the object of the law; (3rd) the legal aspects of the question presented by proviso appearing in Section 1 of the Act of 1913. The certificate of the county superintendent in itself should be sufficient to sustain relator's contention, but the petition also finds abundant support in the evidence. Teachers have no authority to grade schools; there being no statute defining the term "grade school," its meaning must be ascertained from the facts shown by the evidence; the evidence established the fact that graded schools are conducted during the full school year of nine months, have a definite course of study and a supervisor; that rural schools are seldom conducted more than six months, are without supervision and are not considered "grade schools." An average attendance of six pupils would require an enrollment of a much larger number at each school, as illness, climatic conditions and other unavoidable circumstances must result in irregular attendance, especially in sparsely settled districts. The undoubted purpose of the act was to give financial assistance to rural districts having a small property assessment valuation. If the term "grade school" was intended to apply to all schools below high school rank, why was the term "grade school" used at all? Grade schools are a class. The terms "grade school" and "ungraded school" as found in published school reports of the state are used to establish classes of schools. Provisos are used in statutes for the purpose of taking general cases out of a general class. (Sutherland Stat. Const., Sec. 222.) Provisos are strictly construed. (Sutherland Stat. Const., Sec. 223.) If the purpose of the law is as conceded by plaintiffs in error to

aid country districts, the interpretation contended for by plaintiffs in error will defeat the object of the law by taxing property in country districts unable to muster an average attendance of six pupils for periods of six months and divert said tax proceeds to the aid of more populous districts. Education is made compulsory by our constitution and laws. (Art. VII, Sec. 9, State Const.; Sec. 1956, Sec. 1957, Comp. Stats. 1910.) School funds must be equitably distributed. It was not intended that the common school fund should be manipulated by statutory interpretations; in the absence of a controlling statute the grading of schools is confided to local boards. (Roach v. Public Schools, 77 Mo. 487; Board of Education v. Welch, 51 Kan. 792, 33 Pac. 654.) In sme states it is controlled by the electors. (Williamstown Graded School District v. Webb, 89 Ky. 264.) In California it is controlled by local boards. (Loehr v. Board of Education, 108 Pac. 326. See also Westland Publishing Co. v. Royal (Wash.), 78 Pac. 1100.) A "grade school" is a school that has been graded and both "graded schools" and "ungraded schools" may be carried on without disturbing the principle of uniformity required by the Constitution, Art. VII, Section 1. (Robinson v. Schenck, 102 Ind. 313; Richards v. Raymond, 92 Ill. 612, 134 Am. Rep. 951.) School funds must be apportioned according to constitutional and statutory requirements. (35 Cyc. 822-823.) A school tax law must secure the equality and impartiality of the tax which it authorizes. (35 Cyc. 998; Lane v. Stanley, 65 N. C. 153; Curr v. Wooley, 3 Utah, 456, 24 Pac. 831; School District v. Bryan, 20 L. R. A. N. S. 1033-1037; Dickinson v. Edminson, 178 S. W. 930.) Our school fund apportionment law was originally enacted by the Territorial Legislature in 1886 and has been frequently amended. The Act of 1913 places county school tax, poll tax, fines, etc., in the county school fund. For twenty-seven years prior to the enactment of 1913 it had been the policy to aid country districts by payment of $150.00 from the county fund, other re-

quired funds being raised in the district by voting a special levy. The Act of 1913 enlarged the limitation placed on tax levies for county school purposes by Chapter 103 of the Laws of 1911. The state money is apportioned per capita and therefore most of it goes to populous districts. For example, District No. 1 (Cheyenne) pays but fifty-one per cent of the general county school tax, while the number of school children therein is almost double the number in the county outside of District No. 1; the state fund comes from state land income; state lands are for the most part situated in rural districts and are not taxable. The Act of 1913 was undoubtedly intended as a means to balance the distribution of school money; the bulk of the state money goes to populous towns having a larger assessed valuation; hence, it was intended to return some part from the tax assessed in populous districts and distribute it to rural districts having a limited assessed valuation; the limitation of six pupils fixed as to grade schools and ten pupils as to high schools was apparently intended to prevent an increase of teachers in districts where the grade system has been established.

POTTER, CHIEF JUSTICE.

This action was brought in the district court to compel by mandamus the Board of County Commissioners of the County of Laramie to levy a sufficient general school tax upon all the property of said county for the present year 1916 to raise three hundred dollars for each of twenty-seven teachers employed by the relator, School District No. 2 in said county, and engaged in teaching schools in said district for six months or more during the preceding school year ending April 30, 1916. The judgment in the district court was in favor of the plaintiff and the case is here on error.

The controversy relates to the number of teachers engaged in teaching in the district during the preceding year entitled to be considered in levying the general school tax for 1916, under the provisions of Chapter 52 of the Laws

of 1913, as amended by Chapter 159 of the Laws of 1915. And the cause of the controversy is a dispute as to the construction of the first section of said act. The material provisions of that section are as follows:

"It shall be the duty of the clerk of the board of trustees of each school district, including high school district, to file with the County Superintendent of Schools of the county within which such school district lies, on or before the first day of July each year, a certificate showing the number of teachers employed within said school district during the preceding year; Provided, that after the year 1913 every teacher for whom credit shall be claimed in such certificate must have been engaged in teaching in said district for at least six school months during the said school year, or in conjunction with a predecessor shall have taught for said period; * * * * And provided, further, that no credit shall be claimed for a teacher in a grade school where the average number of pupils in attendance during the preceding school year has been less than six pupils per teacher, nor for a teacher in a high school where the average attendance has been less than ten pupils per teacher."

Section 2 of the act provides that it shall be the duty of the County Superintendent of Schools to verify and correct the certificate required by Section 1 to be filed with the superintendent, and on or before the first day of August in each year to file with the county clerk a certificate showing the number of said teachers during the preceding school year in each of the school districts, including high school districts, in the county. (S. L. 1913, Ch. 52, Sec. 2.) Section 3 of the act, by amending and re-enacting Section 7 of Chapter 106 of the Session Laws of 1911, provides as follows:

"It shall be the duty of the Board of County Commissioners of each county to levy a general school tax upon all property within the county in an amount sufficient to raise three hundred dollars for each teacher within said county as certified to by the County Superintendent of Schools;

Provided, that said levy shall not exceed three mills upon the dollar." (Id., Sec. 3.)

Section 4 of the act, by amending and re-enacting Section 1299, Compiled Statutes 1910, as amended in 1911, provides as follows:

"On the first Monday of February in each year, commencing with the year 1914, the County Superintendent of Schools shall apportion the county school tax and all money in the county treasury belonging to the county school fund, including poll taxes, fines and forfeitures, among the several school districts, including high school districts, in proportion to the number of teachers within the respective districts during the preceding school year as determined by the certificate of the County Superintendent of Schools filed with the county clerk; he shall record a statement of such apportionment in his office and shall also notify the county treasurer of the same; he shall thereupon immediately draw an order on the county treasurer, in favor of the treasurer of each school district for the amount due it from said funds, and transmit the same to the treasurer of the district, which draft the county treasurer shall pay to the treasurer of the school district upon presentation, properly endorsed." (Id., Sec. 4.)

The disputed question here presented requires for its determination an interpretation of Section 1 of said act with reference to that part of the last proviso in the section, which reads: "that no credit shall be claimed for a teacher in a grade school where the average number of pupils in attendance during the preceding school year has been less than six pupils per teacher." And the point in dispute is the meaning of the term "grade school" as employed in that provision of the section. On May 17, 1916, the County Superintendent filed with the county clerk a certificate as to teachers employed in the school district aforesaid, the relator in this case, which, omitting the names of the teachers, reads as follows:

"I, Mamie E. Hefferon, Superintendent of Schools, Laramie County, Wyoming, do hereby certify that the following· is a correct list of the names of teachers employed by School District No. 2, in the County of Laramie, State of Wyoming, during the year ending April 30th, 1916, and that each of said teachers were engaged in teaching schools in said district for six months or more, or in conjunction with predecessors have taught for said period, during the school year ending April 30th, 1916. I further certify that there were no grade schools established or conducted in said district during said school year, nor high schools established or conducted therein during said school year. This certificate is made pursuant to Section 2, Chapter 52, Session Laws, 1913."

Said certificate shows by the list of teachers the number of said teachers to have been twenty-seven. On June 3, 1916, the said superintendent filed another certificate reading in the body thereof as follows:

"I, Mamie E. Hefferon, County Superintendent of Schools of Laramie County, Wyoming, do hereby make this supplemental certificate to my certificate dated May 17, 1916, relative to the teachers employed in School District No. 2, in the County of Laramie, State of Wyoming, and to that end do certify: That the number of teachers employed in said district during the year ending April 30, 1916, and teaching six months·or more or in conjunction with a predecessor teaching six months or more during the said year, was twenty-seven; that the number of teachers teaching in said district during said year in schools having an average attendance of six pupils was five; that all of the schools in said district during said year were rural schools with a single teacher to each school; that in all of said schools the pupils were classified by the teachers in charge of the same as belonging to certain grades and the course of instruction of each pupil was regulated as near as practicable according to such classification."

It is shown by the evidence in the case that the relator school district covers a large sparsely settled territory consisting of twenty-two townships and the greater part of another township, containing 231 children of school age according to the last school census; that there is no school in five of the townships, but one school in each of 13 townships, and not more than three schools in any one township, although in some instances a school located on the boundary line between two townships serves a township containing three schools as well as the adjoining township without a school except the one on said boundary line. The evidence also shows that each of the schools of said district is a one-room and one-teacher rural school, and may have pupils of varying grades or stages of advancement; that while the general course of instruction outlined by the State Superintendent of Public Instruction for elementary schools, as provided by statute, is followed said schools are ungraded, as distinguished from graded schools, as that term is usually understood. The pupils in each school may be classified as to studies or progress in elementary school instruction, but without having established grades or an established graded course of study as classification by grades is understood in city schools. Such is our understanding of the evidence, and that in applying the terms "graded" and "ungraded" to schools, the schools of this district would be classified as ungraded. We understand also that the purpose of the County Superintendent's supplementary certificate was to set forth the facts because of this dispute, without withdrawing the statement in the first certificate that there are no "grade schools" in the district. Indeed the superintendent testified in this case that she did not consider the schools of the district as grade schools, but had always considered "all our rural schools as ungraded schools."

The law provides several sources of income for the maintenance of schools in the several school districts of the state, viz.: The state school land income fund, which is required to be distributed annually between the several

counties and school districts therein according to the number of children of school age; a special school tax which may be voted in each district under certain restrictions and limitations as to amount; and what is known as the general school fund made up by the amount collected from a general school tax levied in each county, poll taxes, fines and forfeitures. Prior to the enactment of the statute here in question the poll taxes were paid to the districts in which the persons from whom the same were collected resided, and the general school fund was distributed by first paying to each district in the county the sum of $150, and dividing the remainder among the several districts in proportion to the number of children of school age as shown by the census of such children provided for by law. The statute here in question made some radical changes in the formation and distribution of the general county school fund. It places the poll taxes in that fund, and requires the fund to be distributed among the several districts in proportion to the number of teachers within the respective districts during the preceding year "as determined by the certificate of the Superintendent of Schools filed with the county clerk." And it requires a general school tax to be levied on all property within the county in an amount sufficient to raise a stated sum for each teacher within the county as certified to by the County Superintendent, subject to the limitation that such levy shall not exceed three mills upon the dollar; thus raising the limitation as to the amount of the levy from six-tenths of a mill, as previously fixed by Chapter 106 of the Laws of 1911.

We understand counsel to agree that the general purpose and intention of the act making these changes was to benefit the country school districts. And from that standpoint it is argued by counsel for the county board that the exception in Section 1 of the act as to a teacher in a grade school where the average attendance during the preceding year has been less than six pupils per teacher was intended to apply to all schools in a rural district, though ungraded,

below a high school, as well as to all schools other than a high school in city districts; and it is insisted that unless so applied such provision would have no practical application for the reason that such a low average attendance is liable to occur only in a rural school. And further that it was intended by the restriction as to attendance to require the consolidation of schools in rural districts, by preventing the money raised by taxation throughout the county from being paid to any district on account of a teacher of a school having a less average attendance than that prescribed; and counsel urge that a proper construction of the term "grade school" as used in said proviso is that it includes all schools below a high school. And this construction it is contended is further supported by the use of the term "grade school" in juxtaposition to the term "high school." Counsel for the relator, on the other hand, contends that a construction of the statute which would apply the term "grade school" to the schools of the relator district and other districts similarly situated where schools are ungraded would, instead of benefiting such districts, affect them most disastrously and practically prevent maintaining the necessary schools in such a district. And counsel insists that that the term "grade school" as found in the statute must be construed to mean "graded school," which would take the relator out of the exception and entitle it to $300 for each of its 27 teachers. And we understand the fact to be that if the relator district should be entitled to credit for five teachers only, as contended by the plaintiff in error, the district would receive from the general fund a much smaller proportion than that paid by the taxpayers of such district into the fund.

The question of the construction of the statute thus presented is not easily disposed of. But while it is not free from doubt, we have reached a conclusion which we believe to be consistent with the purpose of the act and its various provisions, without doing violence to any of its terms. We are not convinced that the term "grade school"

because of its use in connection with a similar provision relating to a high school, should be understood or construed as meaning all schools other than high schools. Had it been the intention of the legislature to so include all such other schools it could have been clearly expressed in so many ways that we think it would have been done. The term "elementary school" might have been employed, a term used in our statute as indicating a school below a high school (Laws 1913, Ch. 53), inclusive of both graded and ungraded schools, and we think it is generally used in that sense. (See Ency. Britannica, 11th Ed., "Education," Vol. 8, p. 987.) The statute might have expressly declared that no credit should be claimed for a teacher in any school other than a high school where the average attendance was less than six pupils per teacher. Unless the term "grade school" necessarily means or includes all schools, or, in this statute, all schools other than high schools, we observe no indication in the statute of an intention to cover by the proviso in question all schools supported by taxation or public funds, but it is as reasonable to suppose that the exception was intended to include only a part or a particular class of such schools. The very use of a term designating a class is indicative of an intention to specify a particular kind, rather than to include all schools.

The provision in question is an exception in the statute and should be strictly construed. (Sutherland on Stat. Constr., Secs. 222, 223.) And the term "grade school" which is employed should not be enlarged beyond its ordinary meaning, if it has any, nor beyond the scope that it may clearly cover. The term has not been defined in our statutes, and we have been unable to discover that it is a term usually, if ever, employed except possibly with reference to graded schools. A "graded school" is defined in the Century Dictionary as follows: "A school divided into departments taught by different teachers, in which the children pass from the lower departments to the higher as they advance in education." And in Webster's New Interna-

tional Dictionary the term "graded school" is defined as "a school divided into successive grades or departments, through which the pupils pass in course." But the term "grade school" does not seem to have been defined in any dictionary nor has any published definition of it by competent authority been cited or referred to by counsel.

We doubt if the term can be said to have, intrinsically, any real or definite meaning except by reference to the term "graded school," and as indicating a school of that kind. But so far as it may have a distinctive meaning, we are of the opinion that it can mean nothing more than a school in which there are grades, or a school divided into grades, and that as so defined it can apply only to a graded school, for, technically, there are no grades in an ungraded school. We suppose that generally in a rural one-teacher school the pupils will vary in stages of advancement, and may, therefore, be classified as to studies; but that alone will not constitute it a graded school, as that term is defined or usually employed and understood. If the term found in the statute is ever used as comprehending more than that above stated, such added or greater meaning is, in our opinion, too indefinite to justify its adoption in construing this statute.

The definition of a "graded school" found in the Century Dictionary refers to a school divided into different departments taught by different teachers. The sentence of the statute in which the term "grade school" is found seems to have reference to a school containing more than one teacher. It reads: "No credit shall be claimed for a teacher in a grade school where the average number of pupils in attendance during the preceding school year has been less than six pupils per teacher." We perceive no reason for using the words "per teacher" with reference to a school containing only one teacher. We are not prepared to hold by reason of the language quoted that the provision could not be applied to any school having but one teacher; but we do think that the clear though implied reference in the provision to a school with more than one teacher is at least

some indication that a graded school was intended by the use of the term "grade school."

Under the statute as thus construed, the district court properly directed the levy of the tax as prayed for, and the judgment will be affirmed.                    *Affirmed.*

BEARD, J., concurs.

SCOTT, J., did not sit.